EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
CHRISTOPHER K. PELHAM (Cal. Bar No. 241068)
Assistant United States Attorney
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0610
     Facsimile: (213) 894-0142
     E-mail:    christopher.pelham@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 14-267-MWF |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION AS TO DEFENDANT BIRGILIO FLORES |
| v. | |
| BIRGILIO FLORES, | Sent. Date: 09/21/2015 |
| Defendant. | Sent. Time: 1:30 p.m |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Christopher K. Pelham, hereby files it sentencing position as to defendant BIRGILIO FLORES ("defendant") in the above-captioned case.

This sentencing position brief is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

For the reasons set forth in the attached memorandum, the government believes that defendant should be sentenced to a term of imprisonment of **37 months**, and in all other respects as recommended by the Probation Office.

Dated: August 5, 2015            Respectfully submitted,

                                 EILEEN M. DECKER
                                 United States Attorney

                                 LAWRENCE S. MIDDLETON
                                 Assistant United States Attorney
                                 Chief, Criminal Division


                                        /s/
                                 ─────────────────────────────────
                                 CHRISTOPHER K. PELHAM
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION AND FACTUAL BACKGROUND**

On May 28, 2015, defendant pleaded guilty to one count of conspiracy to traffic methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). Because defendant did not admit a specific drug quantity, his conviction invokes no mandatory minimum sentence and a maximum sentence of 20 years. Under his plea agreement with the government, defendant stipulated and admitted that between at least December 2011 and February 2012, he agreed to distribute methamphetamine throughout California. Defendant admitted that he "acted as a broker between large-scale methamphetamine suppliers located in Southern and Central California." Defendant admitted that in furtherance of the conspiracy, in February 2012, he used coded language over a telephone to try to broker a drug sale between a Southern California supplier and one of defendant's customers.

In the Plea Agreement, defendant and the government agreed that defendant's conduct implicates base offense level 28 under Sentencing Guidelines § 2D1.1(c)(4). The parties agreed that they could seek a sentence outside of the guidelines range.

For the reasons stated below, the government recommends that the Court sentence defendant to 37 months imprisonment.

**II. FINDINGS AND RECOMMENDATIONS OF THE PROBATION OFFICE**

The Probation Office concurred that defendant's conduct implicated a base offense level of 28. (PSR § 14.) The Probation Office also determined that defendant has three prior convictions, including (i) a grand theft conviction from 1980 (PSR ¶ 28), a drug trafficking conviction from 1986 (PSR ¶ 29), and a receipt of stolen

property conviction from 2007 (PSR ¶ 30).  The Probation Office determined that this criminal history score resulted in a Category of II.  (PSR ¶ 32.)

The Probation Office also noted that defendant has a history of employment.  According to the PSR, defendant began employment as a farm labor contractor in Caruthers, California; critically, defendant was not arrested in this case until after he started that work.  (PSR ¶ 48.)  The PSR notes that defendant's employer has described him as "a very hard worker."  (Id.)  The Probation Office indicated that from 2002 until 2011, defendant held other jobs, including as a truck driver and as a loader.  (PSR ¶ 49.)  For these and other reasons, the Probation Office recommended that defendant receive a two-level variance from the otherwise-applicable guidelines range.

**III. CO-DEFENDANTS' SENTENCES**

The Court must consider the co-defendants' sentences when determining defendant's punishment.  This chart shows the Court's sentencing calculations to date in this case.

| Co-Defendant | Post-Acceptance Base O.L. (as calculated in PSR) | CHC (PSR) | Sentence |
|---|---|---|---|
| GARCIA (5) | 29 | III | 78 mos. |
| CARRANZA (6) | 34 (Career Offender) | VI | Sent. pending (10 year man-min) |
| FLORES (8) | 12 | IV | Time served (about 6 months) |
| ANAYA (11) | 27 | I | 24 mos. |
| YUCUPICIO (12) | 29 | I | Sent. pending |

2

Defendant's sentence should be more severe than that of co-defendants Anaya and Yucupicio. Anaya and Yucupicio played non-trivial roles in the conspiracy, and each admitted that they helped "store and distribute drugs at [a Stash House in South Los Angeles] for the benefit of higher-ups of the conspiracy." (See, e.g. CR 127 at pp. 5-6.) Because Anaya and Yucupicio's roles were nevertheless relatively small (compared with their co-conspirators), and because neither of them had a criminal history, the government agreed to grant each of them a minor role adjustment and a Booker variance of 5-6 levels. (See, e.g. CR 127 at p. 7.) These defendants' base offense level was based on large-scale drug seizure from the stash house that they helped operate.

Defendant's conduct is similar to that of Miguel Flores,[1] although the government believes that defendant was more culpable and played a more serious role in the conspiracy. As the government stipulated in Miguel Flores' plea agreement, Flores, like defendant, agreed to act as a liaison between a Southern California-based methamphetamine supplier and a drug distributor in Fresno. (CR 109 at 5-6.) Flores's specific conduct, as described in his plea agreement, was limited to asking the Southern California supplier to quote prices for a pound of methamphetamine. (Id.) The difference between defendant and Flores is that, according to the evidence available to the government and the factual stipulations of each of the parties, defendant did more than seek a quote for a specific

---

[1] Miguel Flores's criminal history is not less significant, and is arguably worse, than defendant's. Miguel Flores was convicted of a drug trafficking offense in December 2005 and received a two-year prison sentence. He was also convicted in 2006 and again in 2007 for stolen property offenses, for each of which he also received two-year prison sentences.

3

quantity of methamphetamine.  Defendant also told the Southern California supplier that defendant's buyer would look elsewhere if the supplier did not act faster and then asked the supplier how long it would take for the supplier to complete defendant's order.  (Plea Agreement at ¶ 9.)  Defendant stipulated that his offense level would be based on an agreement to broker the sale of a pound of methamphetamine.  (Plea Agreement § 11.)  By contrast, the government was unable to identify a specific drug quantity that Miguel Flores agreed to help distribute.[2]

Defendant's sentence should be lower than those of Garcia and Carranza.  The government believes that Garcia acted as a proxy for one of the leaders of the conspiracy, and the government did not agree to any variance in Garcia's plea agreement.  (CR 128.)  The government believes that Carranza, in the course of this and other conspiracies, actually purchased and redistributed both a pound of methamphetamine and a kilogram of cocaine.  The government also did not agree to any guidelines-variance in Carranza's plea agreement.

**IV. GOVERNMENT'S RECOMMENDATION**

The government recommends that the Court grant a variance to defendant that is larger than that recommended by the Probation Office.  The government emphasizes that defendant was gainfully employed at the time of his arrest and does have a legitimate work history.  (PSR ¶¶ 48-49.)  In aggravation, defendant does have a prior felony drug conviction for which defendant received a sentence of three years imprisonment.  (PSR ¶ 29.)

---

[2] The government recommended a sentence of 15 months for Miguel Flores, which included a two-level variance from the guidelines.  The Court sentenced Miguel Flores to time served, by which point he had spent about six months in MDC custody.

4